[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

Baudelaire K. Ulysse, )
)
 L.S.U, and A.V.U )
)

**Plaintiff(s),**

vs.

Axiom St Charles

Prairie Pointe
Management,

Jessica Hagendorn

**Defendant(s).**

)
)
)
)
)
)

**18CV8485**
**JUDGE WOOD**
**MAG. JUDGE COX**

**FILED**

DEC 2 7 2018

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## COMPLAINT FOR VIOLATION OF CONSTITUTIONAL RIGHTS

*This form complaint is designed to help you, as a* **pro se** *plaintiff, state your case in a clear manner. Please read the directions and the numbered paragraphs carefully. Some paragraphs may not apply to you. You may cross out paragraphs that do not apply to you. All references to "plaintiff" and "defendant" are stated in the singular but will apply to more than one plaintiff or defendant if that is the nature of the case.*

1.  This is a claim for violation of plaintiff's civil rights as protected by the Constitution and laws of the United States under 42 U.S.C. §§ 1983, 1985, and 1986, and the Fair Housing Act, Sec. 804. [42 U.S.C. 3604.]

2.  The court has jurisdiction under 28 U.S.C. §§ 1343 and 1367.

3.  Plaintiffs full name is Baudelaire K. Ulysse et al.

*If there are additional plaintiffs, fill in the above information as to the first-named plaintiff and complete the information for each additional plaintiff on an extra sheet.*

[If you need additional space for ANY section, please attach an additional sheet and reference that section ]

Defendant, Axiom St Charles, Prairie Pointe Management, and Jessica Hagendorn _ _ _ _ _ _ _ _ , Is
                                                            (name, badge number if known)

☐ an officer or official employed by_____
                                                            (department or agency of government)

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ or

☒ an individual not employed by a governmental entity.

*If there are additional defendants, fill in the above information as to the first-named
defendant and complete the information for each additional defendant on an extra sheet.*

4.      The municipality, township or county under whose authority defendant officer or official

        acted is Kane County. As to plaintiff's federal constitutional claims, the municipality,

        township or county is a defendant only if

        custom or policy allegations are made at paragraph 7 below.

5.      On or about October 10, 2018, approximately  9:00                          ☒ a.m. ☐ p.m.
                            (month,day, year)
        plaintiff was present in the municipality (or unincorporated area) of

        St Charles, in the County of Kane

        State of Illinois, at 1812 Wessel Ct.
                                    (identify location as precisely as possible)

        when defendant violated plaintiff's civil rights as follows *(Place X in each box that
        applies):*

        ☐       arrested or seized plaintiff without probable cause to believe that plaintiff had
                committed, was committing or was about to commit a crime;
        ☐       searched plaintiff or his property without a warrant and without reasonable cause;
        ☐       used excessive force upon plaintiff;
        ☐       failed to intervene to protect plaintiff from violation of plaintiff's civil rights by
                one or more other defendants;
        ☐       failed to provide plaintiff with needed medical care;
        ☒       conspired together to violate one or more of plaintiff's civil rights;

        ☒       Other: and in Fact violated the
        Plaintiff's Civil Rights by
        discriminating against him on the
        basis of Race.

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

3

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

**6.** Plaintiff further alleges as follows: *(Describe what happened that you believe supports your claims. To the extent possible, be specific as to your own actions and the actions of each defendant.)*

*Plaintiff fell behind on rent payments as a result of temporary wage reduction and custody battle with his ex-wife*

*during the summer of 2018. Previous managing staff allowed plaintiff to make partial payments*

*to catch up and plaintiff was making payments accordingly. On October 3, 2018, defendant filed for eviction against the plaintiff in*

*Kane County. The balance due to defendant, as stated in their court filing, was*

*$2262.30 for rent arrears through October 31, 2018. Plaintiff, unbeknownst of eviction filing,*

*he hand-delivered a payment of $1,500.00 (bank check) on October 5. Plaintiff was served the*

*eviction paper on October 10, 2018. In addition, he submitted another payment of $1162.30*

*(bank check) on October 22, 2018. On October 22, 2018, a day before the first eviction hearing,*

*defendant returned both checks to plaintiff. At the hearing, the checks were shown to the*

*presiding judge as evidences. The counsel for the defendant said his client does not want to accept*

*payments but wants to evict the plaintiff. The defendant accepted payments or partial payments,*

*from at least two white tenants who were in the same circumstances around the same time period and did not proceed to evict them. However, the plaintiff, who is black and African American, was unfairly denied the same accommodation and ordered on December 11, 2018, to vacate the premise by December 31, 2018. In addition, the defendant, namely the Office Manager Jessica Hagendorn, denied the plaintiff a garage spot that he was promised by previous managing staff, and for more than a month she refused to attend to and or fulfill maintenance requests for pests, ants, and light fixtures in the dining room and bathroom in the plaintiff's unit. Therefore, the defendant discriminated against the plaintiff and his minor children (L.S.U. and A.V.U.), thereby violating their equal rights and protection under the U.S. Constitution and rights under the Fair Housing Act.*

7. Defendant acted knowingly, intentionally, willfully and maliciously.

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

8.    As a result of defendant's conduct, plaintiff was injured as follows:

Plaintiff was forced to take days off work to show up to court multiple times.

Plaintiff and minor children were forced to move out of their apartment by December 31, 2018.

Plaintiff's clean rental history is irreparably damaged and is unable to secure another apartment.

Plaintiff's credit report has been adversely impacted. Plaintiff and his minor children (L.S.U. and

A.V.U.) are now homeless and have suffered severe emotional distress and public humiliation. The lives

of the minor children, L.S.U. and A.V.U., and their schooling have been abruptly disrupted, as their

belongings, including clothing, beddings, books, desks, and crafts had to be placed in storage. The plaintiff's life, including work and the enjoyment of quality of life, has been severely and adversely impacted, as his work clothes, work station at home, and furniture have been placed in storage.

9.    Plaintiff asks that the case be tried by a jury.  ☐ Yes   ☒ No

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

10. Plaintiff also claims violation of rights that may be protected by the laws of Illinois, such as false arrest, assault, battery, false imprisonment, malicious prosecution, conspiracy, and/or any other claim that may be supported by the allegations of this complaint.

**WHEREFORE,** plaintiff asks for the following relief:

A. Damages to compensate for emotional harm, pain and suffering, loss of income, loss of enjoyment of life, and any other distress inflicted by defendants;

B. ☒ *(Place X in box if you are seeking punitive damages.)* Punitive damages against the individual defendant; and

C. Such injunctive, declaratory, or other relief as may be appropriate, including attorney's fees and reasonable expenses as authorized by 42 U.S.C. § 1988.

Plaintiffs signature: _____

Plaintiffs name *(print clearly or type):* Baudelaire K. Ulysse, L.S.U, & A.V.U.

Plaintiffs mailing address: 1812 Wessel Ct

City St Charles                State: Illinois          ZIP:    60174

Plaintiffs telephone number: (312) 725-8064

Plaintiffs email address *(if you prefer to be contacted by email):*
Baudelaire.ulysse@gmail.com

_____

11. Plaintiff has previously filed a case in this district. ☐ Yes ☒ No

*If yes, please list the cases below.*

*Any additional plaintiffs must sign the complaint and provide the same information as the first plaintiff. An additional signature page may be added.*

5

# IN THE CIRCUIT COURT OF THE SIXTEENTH JUDICIAL CIRCUIT
## KANE COUNTY, ILLINOIS

Case No. 18-LM-001385

| | |
|---|---|
| **Axiom St. Charles, LLC d/b/a Prairie Pointe Apartments** | **Baudelaire Ulysse & Any & All Unknown Occupants** |
| Plaintiff(s) | Defendant(s) |

*Thomas M. Hartwith*
Clerk of the Circuit Court
Kane County, Illinois

**10/3/2018**

FILED/IMAGED

SERVE:

Name: Baudelaire Ulysse *& All Unknown Occupants*

Address: 1812 Wessel Court

City, State & Zip: St. Charles, IL 60174

File Stamp

Amount Claimed **$2,262.30**

| | |
|---|---|
| Pltf. Atty **Brian M. Krause, PC** | Add. Pltf. Atty _____ |
| Atty. Registration No. **6296986** | Atty. Registration No. _____ |
| Address **5277 Trillium Blvd** | Address _____ |
| City, State and Zip **Hoffman Estates, IL 60192** | City, State and Zip _____ |
| Attorney E-mail: **bmkrause09@hotmail.com** | Attorney E-mail: _____ |

## SUMMONS

To the above named defendant(s):

☒ A.  You are hereby summoned and required to appear before this court in room _____ **250** _____ of the _____ **Kane County Courthouse, 100 S. Third St., Geneva, IL** _____ at _____ **9:00** a.m. on _____ **October 23, 2018** _____ to answer the complaint in this case, a copy of which is hereto attached. If you fail to do so, a judgment by default may be entered against you for the relief asked in the complaint.

☐ B.  You are hereby summoned and required to file an answer in this case or otherwise file your appearance, in the Office of the Clerk of this Court, within 30 days after service of this summons, exclusive of the day of service. If you fail to do so, judgment or decree by default may be taken against you for the relief prayed in the complaint.

☐ C.  You are further Notified that a dissolution action stay is in full force and effect upon service of this summons. The Conditions of stay are set forth on page two (2) of this summons, and are applicable to the parties as set forth in the statute.

D.  E-filing is now mandatory for documents in civil cases with limited exemptions. To efile, you must first create an account with an e-filing service provider. Visit http://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/FAQ/gethelp.asp or talk with your local circuit clerk's office.

TO THE SHERIFF OR OTHER PROCESS SERVER:

This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. In the event that paragraph A of this summons is applicable, this summons may not be served less than three days before the day for appearance. If service cannot be made, this summons shall be returned so endorsed.

This summons may not be served later than 30 days after its date if paragraph B is applicable.

DATE OF SERVICE ___ *10/10/18* ___
(To be inserted by process server on copy left with the defendant or other person)

**10/3/2018**

WITNESS, _____ (date)

*Thomas M. Hartwith*
Clerk of Court

Form 166-A (08/18)    Page 1 of 2

Kane County Circuit Court    THOMAS M. HARTWELL    ACCEPTED: 10/3/2018 10:24 AM    By: PS    Env #2417216

IN THE CIRCUIT COURT OF THE SIXTEENTH JUDICIAL CIRCUIT
KANE COUNTY, ILLINOIS

Clerk of the Circuit Court
Kane County, Illinois

**10/3/2018 10:06 AM**

FILED/IMAGED

| | |
|---|---|
| AXIOM ST. CHARLES, LLC d/b/a PRAIRIE POINTE APARTMENTS | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| BAUDELAIRE ULYSSE & ANY & ALL UNKNOWN OCCUPANTS | ) ) ) |
| Defendants. | ) ) ) |

No. 18-LM-001385

## COMPLAINT IN FORCIBLE ENTRY AND DETAINER

Plaintiff, AXIOM ST. CHARLES, LLC d/b/a PRAIRIE POINTE APARTMENTS ("Landlord"), by and through its attorney, BRIAN M. KRAUSE, PC, complains against the Defendants, BAUDELAIRE ULYSSE (collectively "Tenant") and ANY & ALL UNKNOWN OCCUPANTS as follows:

### PARTIES

1. Landlord is an Illinois Limited Liability Company with its principal address in Lincolnshire, Illinois.

2. Tenant, upon information and belief, is an individual residing at 1812 Wessel Court, St. Charles, Kane County, IL 60174.

3. Tenant is a lessee under a lease for residential property located at 1812 Wessel Court, St. Charles, Kane County, IL 60174 ("Premises").

### JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter under 735 ILCS 5/2-209 because all of the parties reside in or do business in Illinois. Kane County is the proper venue for this dispute under 735 ILCS 5/2-101, et. seq., because the transactions which are the subject of this complaint took place in Kane County and all of the Defendants reside in Kane County.

5. Landlord is the Lessor of Premises.

### BREACH OF LEASE

6. Landlord reincorporates and alleges Paragraphs 1 through 5, inclusive, as Paragraph 6, inclusive herein.

- 1 -

7. Tenant entered into a Lease with Landlord for the Premises ("Lease"). A true and correct copy of the Lease is attached hereto as Exhibit "A".

8. Under the Lease, Tenant promised to pay monthly rent to the Landlord for the Premises.

9. Tenant took possession of the Premises pursuant to the Lease and currently occupies the Premises.

10. Tenant has now failed to pay rent as required under the Lease.

11. That Landlord caused a Five Day Notice to be served on Tenant. *See* Exhibit "B" attached hereto.

12. That Tenant has failed to pay all sums due after service of the Five Day Notice.

13. There is due to Landlord from Tenant for current rent arrearage through October 31, 2018, the sum of $2,262.30.

14. Landlord is entitled to possession of the Leased Premises and Tenant and Unknown Occupants wrongfully withhold possession.

15. Section 32 of the Lease provides for the recovery of attorneys' fees and court costs and such amounts are requested hereunder.

WHEREFORE, Plaintiff/Owner requests that:

    A. A judgment be entered awarding Landlord immediate possession of the Premises;

    B. A judgment be entered against Tenant and for Landlord for all rent due as of the date of this filing, which is $2,262.30.

    C. A judgment be entered against Tenant and for Landlord for all subsequent rent accruing from the date of filing this Complaint; and

    D. All late fees, interest and attorneys' fees, costs and any other relief this court deems just and reasonable.

Respectfully Submitted,

Axiom St. Charles, LLC

By: _____

Their Attorney

Brian M. Krause
399 Wall Street, Unit H
Glendale Heights, IL 60139
(630) 388-8253
ARDC #6296986

- 2 -

**NOTICE TO DEFENDANTS - Pursuant to Supreme Court Rule**

In a civil action for money (excess of $15,000) in which the summons requires your appearance on a specified day, you may enter your appearance as follows:

1. You may enter your appearance prior to the time specified in the summons by filing a written appearance, answer or motion in person or by attorney to the Office of the Kane County Circuit Clerk, 540 S. Randall Rd., St. Charles, IL 60174.

2. You may enter your appearance at the time and place specified in the summons by making your presence known to the Judge when your case is called.

In either event YOU MUST APPEAR IN PERSON OR BY ATTORNEY at the time and place specified in the summons or a default Judgment will be entered against you.

When you appear in Court, the Judge will require you to enter your appearance in writing, if you have not already done so. Your written appearance, answer, or motion shall state with particularity the address where service of notice or papers may be made upon you or an attorney representing you.

Your case will be heard on the date set forth in the summons unless otherwise ordered by the Court. Only the Court can make this exception. Do not call upon the Circuit Court Clerk or the Sheriff's Office if you feel you will be unable to be present at the time and place specified. Continuances can be granted only on the day set forth in the summons, and then only for good cause shown. You, or someone representing you, MUST APPEAR IN PERSON at the specified time and place and make such a request.

If you owe and desire to pay the claim of the plaintiff before the return date on the summons, notify the plaintiff or his/her attorney if you desire to do so. Request that he/she appear at the time specified and ask for the dismissal of the suit against you. Do not make such a request of the Circuit Court Clerk or the Sheriff, as only the Judge can dismiss a case, and then only with a proper court order which must be entered in open Court.

## CONDITIONS OF DISSOLUTION ACTION STAY

### 750 ILCS 5/501.1

### Chapter 40, paragraph 501.1, Illinois Revised Statutes

(a) Upon service of a summons and petition or praecipe filed under the Illinois Marriage and Dissolution of Marriage Act or upon the filing of the respondent's appearance in the proceeding, whichever first occurs, a dissolution action stay shall be in effect against both parties and their agents and employees, without bond or further notice, until a final judgment is entered, the proceeding is dismissed, or until further order of the court:

(1) restraining both parties from physically abusing, harassing, intimidating, striking, or interfering with the personal liberty of the other party or the minor children of either party; and

(2) restraining both parties from concealing a minor child of either party from the child's other parent. The restraint provided in this subsection (e) does not operate to make unavailable any of the remedies provided in the Illinois Domestic Violence Act of 1986.

# PR  IRIE POINTE APARTMENTS LE/  

| Lessor: | Axiom St. Charles, LLC D/B/A Prairie Pointe | | Lessee(s): | Baudelaire Ulysse | | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | LESSOR'S AGENT FOR COLLECTION OF RENT AND OTHER PAYMENTS; LESSOR'S AGENT FOR SERVICE OF LEGAL PROCESS AND OTHER NOTICES AND DEMANDS; AND LESSOR'S MANAGER: | | Leased Premises: | 1812 Wessel Court St. Charles, Illinois 60174 | | | |
| | Prairie Pointe 1820 Wessel Court St Charles, Il 60174 | | Occupants Authorized to live in the Leased premises in addition to Lessee(s): | | | | |

| Dates | | Move In Fees: | Charges: | | Deposits | | Utilities: | Billing Method |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Lease Begin: | 6/21/2018 | | Total Monthly Rent : | $1294.50 | Total: | $700.00 | Gas: | Half |
| Lease End: | 6/20/2019 | | Base Rent : | $1280.00 | Apartment: | $700.00 | Water: | Half |
| Lease: | 6/5/2018 | | | | | | Trash: | $14.50 |
| Prepared By: | SW | | | | | | Electric, Phone & Internet: | Third Party |

ALL PARTIES LISTED ABOVE AS LESSOR AND LESSEE ARE HEREIN REFERRED TO INDIVIDUALLY AND COLLECTIVELY AS LESSOR AND LESSEE RESPECTIVELY; ALL LESSEES SHALL BE HELD JOINTLY AND SEVERALLY LIABLE. THE ABOVE NAMED LESSOR AND LESSEE DO HEREBY AGREE AS FOLLOWS:

PRIOR TO THE LEASE END DATE, LESSEE SHALL FURNISH TO LESSOR 60 DAYS ADVANCE WRITTEN NOTICE AS TO THEIR INTENT TO EITHER RENEW THE EXISITING LEASE UPON TERMS TO BE AGREED UPON BY THE PARTIES HERETO OR VACATE THE LEASED PREMISES.SUBJECT TO LESSOR'S MITIGATION OBLIGATIONS AND OTHER PROVISIONS OF LAW, IF LESSEE FAILS TO TIMELY FURNISH SAID WRITTEN NOTICE, THEN LESSOR SHALL BE ENTITLED TO CHARGE LESSEE FOR ADDITIONAL TWO (2) MONTHS RENT FOLLOWING THE EXPIRATION DATE OF THE LEASE AS LIQUIDATED DAMAGES PLUS OTHER LEGAL POWER REMEDIES PROVIDED BY LAW. WRITTEN NOTICE MUST BE SUBMITTED PRIOR TO THE PAY PERIOD (1ST OF THE MONTH).

INITIALS:

1. **Rent Payments and Term of Lease:** Lessor agrees to rent to Lessee and Lessee agrees to rent from Lessor the above-described premises to be used only for normal residential purposes and said premises (the "Leased Premises") are not to be occupied other than the Lessor and the additional persons specified above.

   a. First day of Lease Term: 6/21/2018 Time: NOON.

   b. Last day of Lease Term: 6/20/2019 Time; NOON,

   • If actual commencement of occupancy of the Leased Premises is delayed because of construction, or the holding over of a prior tenant, Lessor shall not be liable for Lease in any respect for such delay and this Lease shall remain in full force and effect subject to the following: (1) The rent shall be abated on a daily basis during each and every day of such delay, and (2) in the event such delay continues for three or more days, Lessee may terminate the Lease by giving notice in writing to Lessor no later than the fifth day of such delay, whereupon Lessee shall be entitled only to a refund of the refundable portion of Lessee's Security Deposit and the refundable portion of any current money or prepaid rent paid. The above-stated terms apply solely to events of holding over and construction delays and specifically exclude items of cleaning or minor repairs which appear on the Apartment Inspection Checklist.

   INITIALS:

   • The monthly rent to be paid during the term of this Lease shall be $1294.50 payable for the term of this Lease shall equal the monthly rent times the number of months in the term. If the term of this Lease shall not begin on the first day of the month, then the total rent payable shall be adjusted pro-rata to reflect the number of days in the first partial month, except if provided otherwise herein. Lessee shall pay to Lessor, in addition to amounts due for rent or other charges, any sales tax if applicable.

   INITIALS:

   • The monthly rent is due and payable on the FIRST DAY of each and every month during the Lessee term without demand; time is of the essence. Any partial rent for the first month is due on or before the commencement date of this lease. All payments must be received on or before the then due and shall be delivered personally or mailed to the above-named Agent for Collection of Rent or such other agent as the Lessor may designate in written notice to Lessee. All Lessees, if more than one, shall be jointly and severally liable for the full amount of any payments due under this Lease and all other terms and conditions.

2. **Parking Fees / Garage Rent:** Together with the Lease for the above-described premises the Lessee shall be entitled to the use of outdoor parking space(s). If available Lessee may rent indoor parking spaces for an additional monthly fee.

3. **Payment of Utilities:** Lessee shall pay utilities from the first day of possession until to the last day of the Lease term or extension thereof unless said utility is included with the rent listed above. In the event Lessee fails to pay any utility charges when due, then Lessor, at Lessor's option, may pay said past due utility charges and Lessee shall indemnify Lessor upon billing for any amounts it shall pay on behalf of Lessee, within five (5) days after receiving written notice from the Lessor as to the amount paid on behalf of Lessee. Lessee shall provide Lessor Electrical account number for verification at time of possession.

4. **RUBS:** The Residential Utility Billing System (RUBS) when applicable will be used to determine Lessee share of a common metered or billed utility. The percentage listed above represents the Lessee share of the utility expense. The Utility cost is divided between residents by apartment size, number of residents and other factors including an allocation for common area usage paid for by the Lessor.

5. **Late Charges:** If any installment of rent or other charge is received after the THIRD DAY of each month that the rent is due, there shall be an additional rent charge in the amount of $50.00. An additional $50.00 shall be charged after the EIGHTH DAY of the month if all of the same month's rent is not paid in full. The preceding sentence shall not be construed or interpreted as being a grace period for payment due hereunder, and it is expressly understood that all rental and other payments by Lessee shall be due and payable on the first day of the month

without demand and time is of the essence with respect to said payments.

INITIALS:

6. **NSF Payments:** Any amount due herein shall not be deemed to be paid until the check given therefore shall clear the bank upon its drawn. If Lessee's payment is made by check, and the check fails to clear the bank, a service charge of $50.00 will be assessed, in addition to any late charges referred to in Paragraph 4. All past due rent and charges shall be immediately due and payable by certified funds (Cashiers Check or Money Order). After one NSF check all future payments must be made by certified funds.

INITIALS:

7. **Rent Credit / Concession:** Lessee agrees that if any rent credit/concession was granted for this lease said rent credit/concession shall become immediately due and payable to Lessor from Lessee in the event of default of Lease.

8. **No Rent Reduction:** Lessee's covenant to pay rent is and shall be independent of each and every other covenant of this lease. Lessee agrees that any claim by Lessee against Lessor shall not be deducted from rent nor set off against any claim for rent in any action.

9. **Security Deposit:** Lessee agrees that a security deposit in the amount of $700.00 shall be paid to Lessor prior to occupancy. This security deposit would automatically continue for any renewal or extension of this lease. Said deposit shall be refunded to Lessee within thirty (30) days after Lessee vacates the premises under the conditions hereinafter set forth. LESSEE IS NOT ALLOWED TO SUBSTITUTE OR APPLY THE SECURITY DEPOSIT FOR RENT OR OTHER CHARGES OWING.

INITIALS:

Lessee shall, in writing and within five (5) days of surrendering said premises, provide Lessor with an address to which the refundable portion of the security deposit may be returned to Lessee. Lessor shall, within thirty (30) days after Lessee surrenders said premises, return the refundable portion of said security deposit to Lessee at the written address provided for such refund or to Lessee's last known address, providing therewith a written statement accounting for any amounts withheld. Lessor shall pay interest as required by the Illinois Compiled Statutes on any security deposit at the end of every twelve (12) month rental period, unless the Lessee is in default under the terms of the lease. The rate of interest shall be paid pursuant to 765 ILCS 715/1 and shall be not paid in cash but shall be paid in the form of a credit to be applied to the next month's rent that is due, unless the tenant has vacated at the end of the tenant's lease and then the payment will be sent to tenant at tenant's forwarding address by check.

10. **Application of Payments:** Payment of all sums is an independent covenant. At Lessor's option and without notice, funds received will be applied to unpaid obligations prior to current rent due regardless of notations on checks, money orders, or other payment methods. All sums other than rent are due upon Lessor's demand. After the due date, Lessor does not have to accept the rent or any other payments, except as required by law after service of a Landlord's Five-Day Notice.

11. **Other Charges:** Subject to the provisions of State or Federal Law, all other charges not paid currently shall also be deducted from the security deposit.

12. **Deposit Refund:** The security deposit will not be refunded unless all of the following has occurred, subject to state law.

    a. The Full Term of this lease and any renewals or extension has expired.

    b. The Lessee has given written notice of the intent to vacate the premises at least sixty (60) days before the termination of the lease.

    c. There is no damage to the property other than normal wear and tear.

    d. The Apartment is clean and in similar condition to move-in.

    e. All keys have been returned together with any laundry cards or other access devices provided by the Lessor.

P.  IRIE POINTE APARTMENTS LE.  E

f.  There are no outstanding charges of any kind due and owing including but not limited to late fees and rent.

g.  All debris, rubbish and garbage have been removed from the property by the Lessee or his/her agent.

The Lessor as required by law, shall provide Lessee an itemized statement of such damage and charges of repairing or replacing same. Lessor labor rate is $35.00 per hour for all repairs. Actual costs will be deducted: materials purchased and contractor work required to restore the property.

13.  Condition of the Premises:  Lessee shall have seven (5) days after date of occupancy to do any of the following: 1) Make an inspection of said premises and shall complete and sign the Apartment Inspection Report, which is provided herewith listing therein, among other things asked for, any defects or needed repair in or about the premises. Lessee is responsible for giving notice to Lessor of any required service; or 2) Request in writing a list of physical damages or defects, if any, charged to the previous tenant's security deposit. Lessee has examined the premises prior to accepting same and prior to the execution of this Lease, and Lessee is satisfied with the physical condition thereof, including but not limited to the heating, plumbing and smoke/carbon monoxide detectors and the taking possession shall be conclusive evidence of Lessee's receipt thereof in good order and repair. No premises as to condition or repair have been made by Lessor or his agent which are not herein expressed, and no promises to decorate, repair or modify the premises, which are not contained herein, have been made by Lessor or his agent.

14.  Lessee to Maintain:  Said premises shall be maintained and left by Lessee in a clean and undamaged condition. The cost or estimate of repairing any damage to said premises, which is not listed in the Apartment Inspection Report, shall be deducted from the security deposit, as will the cost of restoring the premises to a clean and rentable condition, normal wear and tear excepted.

15.  Obligation of Lessee:  During the Lease term, as a condition or Lessee's continuing right to use and occupy the premises, and in addition to other obligations imposed upon Lessee by law and by this Lease, Lessee agrees as follows:

a.  Pets:  Lessee shall not keep in or about said premises any cats, dogs, fowl or other animals including birds on the premises without the written consent of Lessor, except as listed on the Pet Addendum, hereby attached to and made a part of this lease.

b.  Use Restrictions:  Lessee shall not permit the premises to be used for any immoral or unlawful purpose or any purpose that will, in the sole judgment and desecration of Lessor, injure the reputation of the premises or the building of which the premises are a part. Lessee shall not use or keep in or about the premises any article or thing which would in any manner increase the risk of fire, or conflict with any fire laws or regulations of the fire department, or increase the rate of any insurance on said building or on any property or equipment situated inside said building. Lessee shall not permit the premises to be used for the operation of any business.

c.  No Loitering:  There shall be no lounging, sitting upon, loitering or unnecessary carrying on or upon the front steps, sidewalk, ceiling, stairways, halls, landings, parking lot or other public areas of the premises by Lessee, family members or guests.

d.  Lessor not liable for property damage or loss:  Lessee expressly agrees that Lessor shall not be liable to Lessee or others, including Lessee's guests, occupants and invitees for any damage to or loss of any personal property located in or about the premises or the building of which the premises are a part, where said damage or loss results from any cause whatsoever, other than the negligence of Lessor. It is the responsibility of the Lessee to provide insurance for their personal property.

e.  Lessor not liable for personal injury:  Lessee expressly agrees that Lessor shall not be liable for any injuries to the person of Lessee or others, including Lessee's occupants, guests, and invitees, from any cause whatsoever other than the negligent act of Lessor. It is the responsibility of the Lessee to provide insurance for their liability covering the leased premises.

f.  Lessee to keep premises clean and in good repair:  Lessee shall keep the premises in a clean, tenantable condition and in as good repair as at the beginning of the Lease term, normal wear and tear excepted.

g.  Mold/Mildew:  Lessee shall keep the apartment clean and to take other measures to rebud and prevent mold and mildew growth from accumulating in the apartment. Lessee agrees to clean the apartment on a regular basis and to remove visible moisture that is caused by the blocking and or covering of any of the heating, ventilation or air conditioning ducts in the apartment. Lessee agrees to immediately report to the Lessor any evidence of a water leak or excessive moisture in the apartment as well as in a storage area, garage or other common area; any evidence of mold/ mildew growth that cannot be removed by application of common household cleaner and wiping the area; any failure or malfunction in the heating, ventilating or air conditioning system in the apartment; and any inoperable doors or windows. Lessee shall be responsible for damage to the apartment and Lessee's property as well as injury to Lessee, their occupants and guests resulting from Lessee's failure to comply with this lease clause. Lessee represents and warrants that any all personal items being moved into the premises are free of mold, and further that the Lessee has not previously resided in a premises with a mold problem. Lessee agrees to hold harmless and to indemnify the Lessor, for any changes arising from Lessee's failure to accurately and truthfully represent the foregoing.

h.  Lessee responsible for acts and breaches of Lessee by Lessee and Lessee's occupants, guests and invitees:  Lessee shall be responsible for all intentional and negligent acts or breaches of this Lease by Lessee, Lessee's occupants, guests, and invitees. Lessee shall be liable for all damage to the premises and appliances and equipment belonging thereto, in any way caused by acts of Lessee, Lessee's occupants, guests, and invitees.

i.  No noise or disturbance allowed:  Lessee, Lessee's occupants, guests, and invitees shall not become intoxicated, disorderly, harass or solicit residents, their guests or others, create or cause any odors or create or permit any unnecessary, unreasonable or improper noise of disturbance in or about the premises or the building of which the premises are a part, including and not by way of limitation,

the operation of a stereo, radio or television set or playing of a musical instrument or singing in a manner or at times which might be objectionable to other tenants.

j.  Housekeeping / Refuse disposal:  All refuse and waste shall be routinely and frequently removed from the premises and deposited in trash bags in trash containers in designated areas only. Dininpipes shall be kept clear of cooking grease, sanitary napkins, hair and other debris. No garbage is allowed, even temporarily in halls, balconies or on the grounds. Lessee shall comply with any recycling rules, regulations and ordinances imposed.

k.  Parking restrictions:  Where parking is allowed, Lessee shall at all times park vehicles only in a proper manner upon the term and conditions of the Parking Policies associated herein and shall not obstruct or interfere with the ingress or egress of others. Parking spaces are to be used by Lessee's vehicles only and are limited to use by private vehicles. No commercial or recreational vehicles shall be parked without written consent of Lessor.

l.  Assignment and subletting:  Lessee may not assign this Lease nor sublet all or part of the premises or parking area without Lessor's prior written consent.

m.  Written consent needed for altering or decorating:  Lessee shall not alter or decorate said premises without prior written consent of Lessor. All alterations to premises, including and not by way of limitation, painting and wallpapering, shall remain for the benefit of Lessor unless otherwise provided for in said consent. All work after any such consent is given shall be done in a satisfactory and workmanlike manner and with satisfactory materials subject to the written approval of Lessor.

n.  Lessee liable for damage by fastening to premises – nothing to be attached to exterior.  Lessee shall not drive or drill nails, tacks, screws, holes or apply other fasteners on or into any of the walls, ceilings, floors, partitions or woodwork of said premises or allow same to be done without prior written consent of Lessor, and in any case Lessee agrees to be responsible for any damage done and will pay for same. GLUED HANGERS ARE NOT TO BE USED. Nothing whatsoever shall be attached or affixed to the exterior of said premises, whether permanent or otherwise, without prior written consent of Lessor. Lessor is hereby authorized to remove, at the expense of Lessee, anything so attached or affixed without said written consent.

o.  Lessee's interference to tampering with building apparatus/controls prohibited:  Lessee shall not meddle with or interfere in any way with any part of the heating, lighting, plumbing, electrical, smoke and fire detection or other life safety devices, refrigerating or laundry apparatus or controls in or about the Leased premises or the building containing said equipment. No radio or television wires, aerials or connection shall be installed, placed on or attached to the Leased premises without the prior written consent of the Lessor. The Lessor is authorized to remove, at the expense of the Lessee, any such apparatus erected without such written consent.

p.  Smoke & Carbon Monoxide Detectors:  Lessee acknowledges that at the time of obtaining initial possession of the premises, all smoke & carbon monoxide detectors required to be installed in the premises have been installed and are in good working order. Lessee agrees to repair and maintain the smoke & carbon monoxide detector devices including replacement of the energy source when needed.

q.  Windows and Balconies:  Mini-blinds or vertical blinds provided by Lessor must be used for all windows and patio door. Lessee must maintain these coverings and many not change or replace. No sheets, blankets or other coverings are permitted. . Not more than 4 persons are allowed on a balcony at any time. No trash containers, bird feeders, beer kegs, motor driven vehicles, laundry or rugs are permitted on or hung from balconies or patios. Dumping of liquids or garbage including cigarette butts off balconies or patios is prohibited. No signs may be placed in windows, balconies, patios or on the grounds of the premises. There is absolutely no grilling / barbequing on balconies or patios per fire code.

r.  Satellite Dishes:  No satellite dishes maybe installed or used without the written consent of the Lessor if consent is given a $50.00 fee is required.

s.  Criminal Activity:  Residents and members of the resident's household or guest shall not engage in criminal activity, including drug related criminal activity. Drug related criminal activity means the illegal manufacture, sale, distribution, use or possession of a controlled substance (as defined in section 102 of the Controlled Substance Act [21 U.S.C 802]). Any such activity will result in immediate termination of the lease and the Lessor may commence eviction proceedings for any criminal violation committed.

t.  Notification of Criminal Activity:  Lessee agrees to notify Lessor if Lessee or other occupants or guests are convicted of any Criminal Activity defined above in paragraph 15 – s.

u.  Laundry Facility Use:  Lessor assumes no responsibility for the use of the laundry facilities or damages to your personal property. Lessee agrees to remove clothes promptly from machines as others may be waiting to use.

17.  Lessor's Rights:  In addition to other rights provided for, pursuant to this Lease or by law, Lessor shall have the following rights:

a.  Right to regulate telephone, television and electrical outlet installation:  If Lessee shall desire telephone, television or electrical connections, Lessor shall direct the technicians as to where and how the wires are to be introduced and without such direction no boring or cutting for wires shall be permitted.

b.  Right to enter premises:  Lessor may enter the Premises occupied by the Lessee at reasonable times with 24 hours advance notice to inspect the Premises, make repair, perform preventative maintenance, show the premises to prospective tenants, purchasers, lenders, to comply with applicable laws or regulations. Lessor may enter without notice upon consent of Lessee, when a health or safety emergency exists, or if the Lessor is absent and the Lessor believes entry is necessary to protect the Premises or building from damage. Lessee is prohibited from adding or changing locks. Improper denial of access is a breach of this lease.

c.  Right to dispose of property left on premises:  If Lessee shall leave any property on the premises after vacating or abandonment of the premises, Lessee shall be deemed to have abandoned the property, and Lessor shall have the right to dispose of said property as provided by law at Lessee's expense.

d.  Right to Relet:  If Lessee shall remove a substantial portion of his personal property or otherwise abandon or vacated the premises, the Lessor may

## PRAIRIE POINTE APARTMENTS LEASE

immediately re-let the premises upon terms as Lessor may deem practicable; or if the premises become vacant by reason of Lessee's breach, or if this Lease has been terminated by reason of Lessee's Breach, or if Lessee has been evicted, Lessor may re-let the premises, and Lessee shall be liable and pay for any and all expenses of reletting and losses to the end of the term herein above set forth. Tenant's obligation to pay rent during the term or any extension thereof shall not be waived, released or terminated by the service of a five-day notice, demand for possession, notice of termination of tenancy, the filing of a forcible entry and detainer action, or judgment for possession, or any other act resulting in the termination of Lessee's right of possession

18. **Duty to Observe Rules:** Lessee shall observe and comply with the Rules and Regulations established by Lessor, a copy of said Rules and Regulations being attached hereto and incorporated herein by reference. Lessor reserves the right to amend said Rules and Regulations at any time upon 28 days written notice to Lessee. Any violation of any Rules or Regulations shall be deemed to be a breach of this Lease.

19. **Damage by Casualty:** Subject to Illinois law, in the event that the Leased premises suffers casualty loss or damage as a result of fire or other casualty, and in the event that, as a result of said loss or damage, the Leased premises are rendered uninhabitable, and in the event the premises may be restored or the damages repaired, this Lease and the liability for rent shall continue, except that said liability for rent shall be abated during any period or reconstruction. In the event the premises cannot be repaired within sixty (60) days from the happening of such injury, then this Lease shall cease and terminate from the date of such injury. Said liability for rent shall not abate if the loss, damage or injury to the demised premises is caused by the negligence of Lessee, Lessee's occupants, guests or invitees.

20. **Surrender at Termination:** Upon termination of this Lease, or upon termination of Lessee's tenancy, whether by the lapse of time or otherwise, Lessee shall surrender the leased premises to Lessor, maintained in the manner herein required. If Lessee retains possession of the Leased premises or any part thereof after the termination of this Lease or upon termination of Lessee tenancy, whether terminated by lapse of time or otherwise, then in addition to its other rights and remedies provided by law, Lessor may treat such retention of possession as constituting a renewal of this Lease, and to bind Lessee on a month-to-month basis on the same terms and conditions as expressed herein, except that the monthly rent shall automatically be increased to twice the rent in effect for the month immediately preceding the commencement of the holding over. The provisions of this paragraph do not exclude Lessor's rights of re-entry or any other rights of remedies provided or allowed by law herein.

21. **Military Transfer:** In the event Lessee should receive a military transfer or call to active duty this lease may be terminated with the following conditions: 1. Lessee provide Lessor written substantiation of transfer from service or call to duty. 2. Lessee will provide a minimum of thirty day (30) written notice to the Landlord from the date the military transfer or call to active duty is received by Lessee. 3. Lessee remains obligated to pay all rent pro-rated through the date Lessee and/or other occupants vacate the leased premises and any utility charges. 4. Lessee remains responsible for any damages to the unit as a result of Lessee's negligence and/or willful acts while in possession of said unit or by guests of said Lessee.

22. **Miscellaneous Provisions:** Lessor shall have the following miscellaneous provisions:

a. **Limitation of Liability:** Lessor shall not be liable for any loss or damage not caused by Lessor's negligence, which Lessee may sustain from: (a) Theft, burglary or other criminal acts in or about the premises; (b) Delay or interruption in any services; (c) Fire, water, rain, snow, gas or odors or fumes from any source whatsoever and from injury or damage caused by leaking or bursting of pipes or failure or backing up of sewer drains and pipes; (d) Any injury to any person or damage to any property; or (e) Failure to keep said premises and appliances and equipment therein in good repair.

b. **No Intent of Security:** Any security devices or services provided by Lessor or others either directly to the Leased premises or for the rental community of which the Leased premises are a part are provided strictly at option of Lessor and Lessor shall not be responsible for any losses to Lessee which may result in any way due to a breakdown or a discontinuance of said system, or a failure to repair the same. No contract for, or obligation to provide, a security service is created by this Lease. Any agreement to provide such service shall be made by Lessee with an independent contractor not affiliated with Lessor. Lessee hereby indemnifies and holds harmless Lessor from any claims, losses, liabilities, or demands arising out of or in any way pertaining to security services provided by others.

c. **Lessor Consent:** The consent or approval by Lessor to or of any act by Lessee requiring Lessor's consent or approval shall not be deemed to waive or render unnecessary Lessor's consent or approval to or of any subsequent or similar act by Lessee.

d. **Severability:** The invalidity or unenforceability of any provisions of this Lease shall not affect or impair any other provisions.

e. **Headings:** The headings of the several sections contained herein are for convenience only and do not define, limit or construe the contents of such sections.

f. **Successors:** The terms and conditions contained in this Lease shall be binding upon and inure to the benefit of Lessor and Lessee and their respective heirs, executors, administrators, personal representatives, successors, beneficiaries and assigns.

g. **Disclosure:** Lessor may provide information on Lessee's rental history and status to law enforcement and government officials. Rental references will only be provided with Lessee's written authorization.

h. **General:** No oral agreement have been entered into with respect to this Lease. This Lease shall not be modified unless by an instrument in writing signed by Lessor and Lessee. In the event of more than one Lessee, each Lessee is jointly and severely liable for each provision of this Lease. Each Lessee warrants that he or she is of legal age to enter into this Lease. Time is of the essence with respect to the performance of all obligations of Lessee stated herein.

23. **Rent Default:** Should Lessee under a Lease for a term of one year or less, more than one year, or a year-to-year tenant, fail to pay any installment of rent or other charges when due, Lessor may give Lessee written notice of such default, served upon Lessee pursuant to methods of service allowed for by law, requiring Lessee to pay the rent or other charges due or vacate the premises on or before a date at least five (5) days after the service of such notice and, if Lessee fails to comply with such notice, Lessor may declare the right to possession terminated and institute action to expel Lessee from said premises without limiting the liability of Lessee for the rent or other charges due or to become due under this lease. If Lessee has been given such a notice and has remedied said default or been permitted to remain in the premises and, within one year of such previous default, Lessee fails to pay a subsequent installment of rent or other charges when due, the Landlord may, at its option, give Lessee either a Five-Day Notice for failure to pay rent, or may give Lessee a Ten-Day Notice for repeated violations of the payment of rent. After the Ten-Day Notice has expired, if the Lessee has not vacated the leased premises, the Lessor may file a lawsuit to terminate the right to possession and any other amounts due and owing under the lease.

24. **Other Default:** Should Lessee under a Lease for a term of one year or less, more than one year, or a year-to-year tenant, neglect or fail to perform and observe any of the terms and conditions of this Lease, other than for payment of rent or other charges, Lessor may give Lessee written notice of such default, served upon Lessee pursuant to methods of service allowed by law, requiring Lessee to remedy the breach or vacate the premises on or before a date at least ten (10) days after the service of such notice and, if Lessee fails to comply with such notice, Lessor may declare this tenancy terminated and institute action to expel Lessee from said premises, without limiting the liability of Lessee for the rent or other charges due or to become due under this Lease. If Lessee has been given such a notice and has remedied the breach or been permitted to remain in the premises and, within one year of such previous breach, Lessee commits the same or any other breach of the terms and conditions of this Lease, other than for payment of rent, this tenancy may be terminated if, before the breach has been remedied, Lessor serves Lessee with written notice to vacate the premises on or before a date at least ten (10) days after service of the notice, without limiting the liability of the Lessee for the rent or other charges due or to become due under this Lease.

25. **Month to Month:** Should a Lessee on a month-to-month tenancy neglect or fail to pay any installment of rent or other charges when due, Lessor may, before the breach has been remedied, utilize the five (5) day notice procedure described herein to terminate the tenancy of Lessee, and any such termination of tenancy shall not limit the liability of Lessee for the rent or other charges due or to become due under this Lease. Should a month-to-month tenant neglect or fail to perform and observe any of the terms and conditions of this Lease, other than for payment of rent or other charges, Lessor may terminate Lessee's tenancy by giving the Lessee notice requiring Lessee to vacate the premises on or before a date at least ten (10) days after service of the notice, without limiting the liability of the Lessee for the rent or other charges due or to become due under this Lease.

26. **Receipt After Breach or Termination:** No receipt of money by Lessor from Lessee after the termination of this lease or after the service of any notice or after the commencement of any suit, or after final judgment for possession of the premises, shall reinstate, continue or extend the term of this Lease or effect or constitute a waiver of Lessor's rights pursuant to any such notice, demand or suit. The Lessee agrees to pay the cost of advertising and all other expenses incident to re-renting the apartment if vacated, prior to lease expiration or not in compliance with lease terms and shall be liable for any deficiency.

27. **Remedies Cumulative:** All rights and remedies of Lessor herein enumerated shall be cumulative and none shall exclude any other right or remedy allowed or equally, and such rights and remedies may be exercised and enforced concurrently and whenever and as often as the occasion therefore arises. The failure or forbearance on the part of Lessor to enforce any of its rights or remedies in connection with any default shall not be deemed a waiver of such default, nor a consent to any continuation thereof, nor a waiver of the same default at any subsequent date. Any action taken by Lessor under the provisions of this Lease, or to enforce the provisions of this lease, or to declare a termination of Lessee's interest under this Lease, or to repossess itself of the Leased premises, shall not, in any event, release or relieve Lessee from its continuing obligations hereunder, including, and not by way of limitation, Lessee's continuing obligation to make all payments herein provided.

28. **Liens or Sales:** Lessor may encumber the Leased premises and/or the apartment community by mortgage(s) and/or deed(s) of trust and any such mortgage(s) or demand(s) of trust so given shall be a lien on the land and buildings superior to the rights of the Lessee herein. Foreclosure of any mortgage or sale under a deed of trust shall not constitute constructive eviction of Lessee and Lessee agree(s) to the purchase at such foreclosure or sale as if this Lease was by and between Lessee, as tenant, and such purchaser as Lessor. Any sale of the apartment community or any part thereof shall not affect this Lease or any of the obligations of Lessee hereunder, but upon such sale Lessor shall be released from all obligations hereunder and shall look solely to the new owner of the apartment community for the performance of the duties of Lessor hereunder from and after the date of such sale.

29. **Subordination:** Lessee will not do any act which shall encumber Lessor's title to the premises, and if Lessee causes a lien to be placed on the title, or premises, Lessor may discharge the lien and Lessee will reimburse Lessor the amount Lessor expended. This lease shall not be recorded by Lessee and is, and shall be, subordinate to any present or future mortgages now, or hereafter, placed on the premises.

30. **Definition of Lessee:** The term "Lessor" and "Lessee" when used herein shall be taken to mean either singular or plural, masculine or feminine, or as the case may be, and the provisions of this Lease shall bind the parties, their heirs, personal representatives, successors, assigns, occupants, guests and invitees. Notwithstanding the provisions of the preceding sentence, if Lessor transfers its interest in the premises or in this Lease, Lessor shall be relieved of any and all obligations and liabilities accruing from and after the date of such transfer.

31. **Definition of Apartment:** The term "Apartment" when used herein excludes common areas but includes interior living area, exterior patio's, balconies, garages and storerooms for lessee's exclusive use.

32. **Legal Expenses:** To the extent permitted by court rules, statute or ordinance, Lessee shall pay all costs, expenses and attorneys fees which shall be incurred or expended by Lessor due to Lessee's breach of the covenants and agreements of this Lease.

## P. .IRIE POINTE APARTMENTS LE. .E

33. **Forcible Detainer and Waiver of Notices:** As permitted by State Law, If Lessee defaults in the payment of rent or any part thereof, Lessor may distrain for rent and shall have a lien on Lessee's property for all monies due Lessor, or if Lessee defaults in the performance of any of the covenants or agreements herein contained, Lessor or his agents, at his option, may terminate this Lease, and, if abandoned or vacated, may re-enter the premises. Lessee hereby waives all notice of any election by Lessor hereunder, demand for rent, notice to quit, demand for possession, and any and all notices and demands which may or shall be required by any statute of this State relating to forcible entry and detainer, or to landlord and tenant. If Lessor or his agent elects to serve a demand or notice, any demand or notice may be served by delivering a copy to the Lessee or any occupant, or by leaving the same with some person above the age of twelve (12) years, residing on or in possession of the premises or if no one answers the door, by posting the same on the Lessee's door to the premises, or by sending a copy of said notice to the Lessee by certified mail, return receipt requested and regular mail. The mailing of same shall constitute delivery. Non-performance of any of Lessee's obligations shall, without notice, constitute a default and forfeiture of this Lease, and Lessor's failure to take action on account of Lessee's default shall not constitute a waiver of said default.

34. **Compliance with Laws, Statutes and Ordinance:** The Parties to this lease acknowledge that the terms of this lease maybe or become inconsistent with the laws, statutes or ordinances of the jurisdiction in which the premises is located, and where inconsistent , those terms may be superseded by the provisions of such laws, statutes or ordinances. To the extent the provisions of such laws, statutes and ordinances supersede the terms of this lease, such provisions are hereby incorporated into the terms of this lease by this reference, and the parties to this lease agree to refer to such provisions and to be bound thereby.

35. **Insurance Requirements:** Lessee acknowledges and agrees that Lessee shall be responsible to the Lessor for any damages sustained by the Lessor's property due to fire, smoke, explosion, water discharge and/or sewer backup which damages are caused by the negligence of the Lessee or any of the Lessee's invitees; provided, however that such responsibility shall be limited to the first $100,000.00 of loss suffered by the Lessor. As a condition of this Lease, Lessee further agrees to cover this responsibility by securing and maintaining renter's insurance and providing Lessor with a declarations page indicating comprehensive personal liability coverage of at least $100,000.00 for the Lessee and the Lessee's invitees, policy must list Lessor as a additional insured, it being understood that, should Lessee not show proof of such insurance, or if such insurance lapses or is cancelled, Lessee understands that Lessor shall charge Lessee, in addition to rent, an additional fee of $15.00 every month (or part of a month in the event the lapse or cancellation occurs on a day other than the first or last day of the month) during which the Lessee is without such insurance. Such additional payments shall continue until such insurance is reinstated or re-obtained. Nothing herein attained shall cause the Lessor to insure Lessee's property, to advise Lessee as to insurance matters or otherwise places any obligation upon the Lessor.

INITIALS: _____ _____

36. **Application:** The Lessee's application and all the representations contained therein are incorporated as a part of this Lease. Lessee warrants that all the information contained in the application is true, and that if any of said information is false, Lessor may terminate this Lease.

37. **Personal Property Provided by Lessor:** Refrigerator, stove, dishwasher (if applicable), micro wave (if applicable), blinds are the property of the Lessor and are to remain in the unit listed above. The Lessor's property is to be in the same condition in which received other than normal wear and tear from use. If property is damaged or not working due to misuse, Lessee will be responsible for the replacement cost as follows: Refrigerator $800.00, Stove $450.00, Dishwasher $400, Microwave $150.00 and Blinds at 150% of Market prices for applicable sizes.

38. **Lockouts:** A charge of $50.00 will be assessed if "on-call" maintenance staff is called out after office hours to provide access to a Lessee locked out of their apartment. The fee will be assessed immediately upon service and is due and payable with the upcoming months rent. Only Lessee and listed occupant will be allowed access to the apartment. Proper identification must be provided to verify residency. A valid Driver License, Passport, State ID or Student ID is considered acceptable. Lockouts during office hours are free of charge, however the same restrictions apply. Key replacements are $25 for a Building Entry or Apartment Key, $35 for a Mailbox key, and $50 for an Apartment Lock change.

| Building Entry Keys: | Initials |
| --- | --- |
| # _____ | _____ |
| # _____ | _____ |
| # _____ | _____ |

**Pest Control:** Lessor will provide pest control service for the apartment. This service will be performed in accordance with the Pest Control Schedule available in the management office. This preventative maintenance service is mandatory. The only exception is with a verifiable written doctor's note. An inspection of the apartment by pest control technician will still be required. If during any month you are having a problem with pests please contact Lessor. Preventative pest

control services and additional services will be provided at no charge for common pests. However, if a pest problem arises through fault of Lessee, charges will be assessed. The apartment is currently free of any pests specifically bed bugs. If a bed bug problem arises after move-in, a special service will have to be performed. The actual cost of this service would be assessed to the Lessee. Currently service ranges from $900 to $1,400 Lessee may also be charged a fee if entry is denied on the normal scheduled service dates. Failure to notify Lessor of pest problem or pay for bedbug service is a breach of this lease.

41. **Parking Policies:**

A. Resident parking is on a first come, first serve basis for licensed passenger automobiles only.

B. Guests must park along the fence line in order to avoid towing.

C. For reasons of fire protection, ambulance emergency, rubbish removal, snow clearance, child safety, and handicapped spaces, please avoid obstructing any marked areas.

D. Residents are responsible for informing all guests of our parking rules.

E. All residents and guests are expected to park their vehicles in a legal and safe manner.

F. Any illegally parked, unauthorized, or inoperable vehicles will be towed at the expense of the owner.

G. All parking tags must be returned upon move-out date.

H. There will be a $25.00 fee for replacement parking tags.

I. The following is not permitted:

*Parking trailers, boats, semi-trucks, commercial and recreational vehicles anywhere on the property.

*Washing your vehicle.

*Automobile repair of any nature.

*Blocking sidewalks

J. Residents are required to move vehicle after snowfall to insure proper snow removal from lot.

42. **Special Provisions:** Hereby attached to and made a part of this lease are the following Lease Addendums and Policies:

☐ Concession Addendum

☐ Parking Assignment

☐ Pet Addendum

☐ Washer and Dryer Addendum

☐ Standard Cleaning and Repair Charges.

THE UNDERSIGNED HAVE READ THE FOREGOING LEASE AND AGREE TO ABIDE BY ITS TERMS AND CONDITIONS:

LESSEE(S):

_____   6·5·18
Baudelaire Ulysse                Date

_____   _____
                                 Date

_____   _____
                                 Date

_____   _____
                                 Date

LESSOR:

Axiom St. Charles, LLC
D/B/A Prairie Pointe

_____   6/5/18
Jessica Hagendorn, Property Manager   Date



**LANDLORD'S 5 DAY NOTICE**
**OF TERMINATION OF TENANCY**

TO: Baudelaire Ulysse
    1812 Wessel Court
    St. Charles, IL 60174

You are hereby notified that your tenancy or lease of the following described premises, to wit:
1812 Wessel Court together with all other accommodations used by you in connection therewith, will be
terminated as follows.

There is due the undersigned for accrued and past-due rental for said accommodations aforesaid the sum of
      **Two Thousand Six Hundred Eighty Three Dollars & Fifty Seven Cents ($2683.57)**
for which demand is herewith made, and unless payment is made within five (5) days from the date of
service hereof, your tenancy is terminated.

*Only FULL PAYMENT of the rent demanded in this notice will waive the landlord's right to terminate the
lease under this notice, unless the landlord agrees in writing to continue the lease in exchange for
receiving partial payment.*

Unless you promptly comply with the above, suit will be instituted for possession, and for rental due,
together with the costs and reasonable attorney's fees of such proceeding.

Dated this 4th day of September, 2018

                              Lessor
                    BY:
                      Andrea Wright, Asst. Property Manager

**PROOF OF SERVICE**

STATE OF ILLINOIS

**County of Kane**

Andrea Wright, being duly sworn, on oath deposes and says that on the he/she served the above "Notice of
Termination of Tenancy" on the day of **September 4, 2018** as follows:

_✓_ By delivering a true copy thereof to the within named tenant, Baudelaire Ulysse

____ By leaving a true copy thereof with _____ a person above the age of thirteen
     (13) years, residing on or in possession of the above described premises

____ By sending a true copy thereof to the above tenant(s) by regular, certified, or registered mail.

____ By posting a true copy thereof on the premises, there being no one in actual possession thereof.

____ By posting a true copy thereof on the Lessee's door to the premises, no one having answered after
knocking, pursuant to the terms of the Apartment Lease.

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the
undersigned certifies that the statements set forth in this Affidavit of Service are true and correct.

**Resident Ledger**



Date: 09/24/2018

| Code | t0045685 | Property | pp | Lease From | 06/21/2018 |
|------|----------|----------|-----|------------|------------|
| Name | Baudelaire Ulysse | Unit | 1812 | Lease To | 06/20/2019 |
| Address | 1812 Wessel Court | Status | Current | Move In | 04/22/2016 |
| | | Rent | 1280.00 | Move Out | |
| City | St. Charles, IL 60174 | Phone (H) | | Phone (W) | (847) 754-7133 |

| Date | Chg Code | Description | Charge | Payment | Balance | Chg/Rec |
|------|----------|-------------|--------|---------|---------|---------|
| 04/20/2016 | appfeex | Application Fee | 35.00 | | 35.00 | 1943302 |
| 04/20/2016 | depositx | Hold Fee | 100.00 | | 135.00 | 1943303 |
| 04/22/2016 | rentx | Rent for 9 days | 373.50 | | 508.50 | 1943526 |
| 04/22/2016 | garbagex | Tenant Garbage | 4.35 | | 512.85 | 1943527 |
| 04/22/2016 | appfeex | Application Fee | 150.00 | | 662.85 | 1943528 |
| 04/22/2016 | parkfx | Parking Pass | 25.00 | | 687.85 | 1943529 |
| 04/22/2016 | concesx | Rent Concession | (300.00) | | 387.85 | 1943530 |
| 04/22/2016 | depositx | Security Deposit | 700.00 | | 1,087.85 | 1943531 |
| 04/22/2016 | | chk# 1018 :CHECKscan Payment | | 952.85 | 135.00 | 1271732 |
| 04/27/2016 | | chk# 1017 :CHECKscan Payment | | 35.00 | 100.00 | 1272885 |
| 04/29/2016 | depositx | Only $600 Dept | (100.00) | | 0.00 | 1947153 |
| 05/01/2016 | garbagex | Tenant Garbage Bill (05/2016) | 14.50 | | 14.50 | 1955889 |
| 05/01/2016 | rentx | Base Rent (05/2016) | 1,245.00 | | 1,259.50 | 1955890 |
| 05/04/2016 | | chk# 1021 :CHECKscan Payment Reversed by ctrl#1283214 | | 1,259.50 | 0.00 | 1281242 |
| 05/09/2016 | nsfx | Returned check charge | 50.00 | | 50.00 | 1960058 |
| 05/09/2016 | | chk# 1021 NSF receipt Ctrl# 1281242 | | (1,259.50) | 1,309.50 | 1283214 |
| 05/16/2016 | | chk# 8877229 Debit Card One Time Payment ; Web - Resident Services; | | 1,309.50 | 0.00 | 1284075 |
| 06/01/2016 | | gasx | 13.22 | | 13.22 | 1963386 |
| 06/01/2016 | | waterx | 16.63 | | 29.85 | 1963412 |
| 06/01/2016 | | :Prog Gen Reverse for chg# 1963386 | (13.22) | | 16.63 | 1964990 |
| 06/01/2016 | | :Prog Gen Reverse for chg# 1963412 | (16.63) | | 0.00 | 1965011 |
| 06/01/2016 | gasx | GAS 05/01/16-05/31/16 | 13.22 | | 13.22 | 1968900 |
| 06/01/2016 | waterx | WATER 05/01/16-05/31/16 | 16.63 | | 29.85 | 1968926 |
| 06/01/2016 | garbagex | Tenant Garbage Bill (06/2016) | 14.50 | | 44.35 | 1980547 |

| 06/01/2016 | inswaiv | No Insurance Fee (06/2016) | 15.00 | | 59.35 | 1980548 |
|---|---|---|---|---|---|---|
| 06/01/2016 | rentx | Base Rent (06/2016) | 1,245.00 | | 1,304.35 | 1980549 |
| 06/06/2016 | latex | June 2016 Late Fee | 50.00 | | 1,354.35 | 1984154 |
| 06/14/2016 | | chk# 2104 :CHECKscan Payment | | 1,354.35 | 0.00 | 1300290 |
| 07/01/2016 | gasx | GAS 06/01/16-06/30/16 | 8.47 | | 8.47 | 1988095 |
| 07/01/2016 | waterx | WATER 06/01/16-06/30/16 | 18.60 | | 27.07 | 1988128 |
| 07/01/2016 | garbagex | Tenant Garbage Bill (07/2016) | 14.50 | | 41.57 | 1998042 |
| 07/01/2016 | inswaiv | No Insurance Fee (07/2016) | 15.00 | | 56.57 | 1998043 |
| 07/01/2016 | rentx | Base Rent (07/2016) | 1,245.00 | | 1,301.57 | 1998044 |
| 07/05/2016 | latex | July 2016 Late Fee | 50.00 | | 1,351.57 | 2003691 |
| 07/12/2016 | | chk# 210 :CHECKscan Payment | | 1,351.57 | 0.00 | 1313266 |
| 08/01/2016 | gasx | GAS 07/01/16-07/31/16 | 8.50 | | 8.50 | 2008970 |
| 08/01/2016 | waterx | WATER 07/01/16-07/31/16 | 19.60 | | 28.10 | 2009008 |
| 08/01/2016 | garbagex | Tenant Garbage Bill (08/2016) | 14.50 | | 42.60 | 2021566 |
| 08/01/2016 | inswaiv | No Insurance Fee (08/2016) | 15.00 | | 57.60 | 2021567 |
| 08/01/2016 | rentx | Base Rent (08/2016) | 1,245.00 | | 1,302.60 | 2021568 |
| 08/04/2016 | | chk# 2110 :CHECKscan Payment | | 1,302.60 | 0.00 | 1324763 |
| 09/01/2016 | gasx | GAS 08/01/16-08/31/16 | 10.53 | | 10.53 | 2030317 |
| 09/01/2016 | waterx | WATER 08/01/16-08/31/16 | 15.61 | | 26.14 | 2030358 |
| 09/01/2016 | garbagex | Tenant Garbage Bill (09/2016) | 14.50 | | 40.64 | 2039301 |
| 09/01/2016 | inswaiv | No Insurance Fee (09/2016) | 15.00 | | 55.64 | 2039302 |
| 09/01/2016 | rentx | Base Rent (09/2016) | 1,245.00 | | 1,300.64 | 2039303 |
| 09/07/2016 | latex | Sept Late Fee | 50.00 | | 1,350.64 | 2046907 |
| 09/08/2016 | latex | NO Late Charge | (50.00) | | 1,300.64 | 2047307 |
| 09/08/2016 | inswaiv | had Insu In Sept | (15.00) | | 1,285.64 | 2047313 |
| 09/08/2016 | | chk# 10816570 Debit Card One Time Payment ; Web - Resident Services; | | 1,300.64 | (15.00) | 1340920 |
| 09/16/2016 | electx | Elec Bill Back 7/21-8/22/16 | 77.76 | | 62.76 | 2049342 |
| 09/16/2016 | waterbbx | Water Bill Back 7/21-8/22/16 | 16.87 | | 79.63 | 2049343 |
| 10/01/2016 | gasx | GAS 09/01/16-09/30/16 | 8.87 | | 88.50 | 2051120 |
| 10/01/2016 | waterx | WATER 09/01/16-09/30/16 | 17.77 | | 106.27 | 2051163 |
| 10/01/2016 | garbagex | Tenant Garbage Bill (10/2016) | 14.50 | | 120.77 | 2063757 |
| 10/01/2016 | rentx | Base Rent (10/2016) | 1,245.00 | | 1,365.77 | 2063758 |
| 10/03/2016 | electx | Elec Bill 6/26-7/21/2016 | 35.68 | | 1,401.45 | 2064871 |
| 10/03/2016 | | chk# 11192179 Debit Card One Time Payment ; Web - Resident Services; | | 1,401.45 | 0.00 | 1352811 |
| 10/27/2016 | electx | elec bill back | 69.01 | | 69.01 | 2071517 |
| 11/01/2016 | gasx | GAS 10/01/16-10/31/16 | 10.47 | | 79.48 | 2069388 |
| 11/01/2016 | waterx | WATER 10/01/16-10/31/16 | 21.72 | | 101.20 | 2069436 |
| 11/01/2016 | garbagex | Tenant Garbage Bill (11/2016) | 14.50 | | 115.70 | 2079470 |
| 11/01/2016 | rentx | Base Rent (11/2016) | 1,245.00 | | 1,360.70 | 2079471 |
| 11/04/2016 | | chk# 2404 :CHECKscan Payment | | 1,291.69 | 69.01 | 1368061 |
| 11/21/2016 | lockoutx | Resident wants a lock change. RP | 50.00 | | 119.01 | 2087153 |
| 11/22/2016 | lockoutx | Cancel lock change. RP | (50.00) | | 69.01 | 2087210 |
| 12/01/2016 | gasx | GAS 11/01/16-11/30/16 | 9.02 | | 78.03 | 2088333 |
| 12/01/2016 | waterx | WATER 11/01/16-11/30/16 | 18.95 | | 96.98 | 2088383 |
| 12/01/2016 | garbagex | Tenant Garbage Bill (12/2016) | 14.50 | | 111.48 | 2099822 |

| Date | Code | Description | Amount | Payment | Balance | Ref |
|---|---|---|---|---|---|---|
| 12/01/2016 | rentx | Base Rent (12/2016) | 1,245.00 | | 1,356.48 | 2099823 |
| 12/05/2016 | | chk# 2414 :CHECKscan Payment | | 1,356.48 | 0.00 | 1380574 |
| 01/01/2017 | gasx | GAS 12/01/16-12/31/16 | 16.69 | | 16.69 | 2106820 |
| 01/01/2017 | waterx | WATER 12/01/16-12/31/16 | 17.15 | | 33.84 | 2106873 |
| 01/01/2017 | garbagex | Tenant Garbage Bill (01/2017) | 14.50 | | 48.34 | 2117529 |
| 01/01/2017 | rentx | Base Rent (01/2017) | 1,245.00 | | 1,293.34 | 2117530 |
| 01/04/2017 | | chk# 2347 :CHECKscan Payment | | 1,293.34 | 0.00 | 1392780 |
| 01/12/2017 | electx | Electric Bill-11/25/16-12/21/16, RP | 51.17 | | 51.17 | 2123456 |
| 01/12/2017 | waterbbx | Water Bill-11/25/16-12/21/16, RP | 16.87 | | 68.04 | 2123457 |
| 01/25/2017 | | chk# 2350 :CHECKscan Payment | | 68.04 | 0.00 | 1396951 |
| 02/01/2017 | gasx | GAS 01/01/17-01/31/17 | 19.67 | | 19.67 | 2125337 |
| 02/01/2017 | waterx | WATER 01/01/17-01/31/17 | 15.69 | | 35.36 | 2125390 |
| 02/01/2017 | rentx | Base Rent (02/2017) | 1,245.00 | | 1,280.36 | 2133862 |
| 02/01/2017 | garbagex | Tenant Garbage Bill (02/2017) | 14.50 | | 1,294.86 | 2134106 |
| 02/04/2017 | | | | 1,294.86 | 0.00 | 1406035 |
| 03/01/2017 | gasx | GAS 02/01/17-02/28/17 | 24.99 | | 24.99 | 2144066 |
| 03/01/2017 | waterx | WATER 02/01/17-02/28/17 | 19.40 | | 44.39 | 2144119 |
| 03/01/2017 | rentx | Base Rent (03/2017) | 1,245.00 | | 1,289.39 | 2155478 |
| 03/01/2017 | garbagex | Tenant Garbage Bill (03/2017) | 14.50 | | 1,303.89 | 2155724 |
| 03/03/2017 | | chk# 2358 :CHECKscan Payment | | 1,303.89 | 0.00 | 1417839 |
| 04/01/2017 | gasx | GAS 03/01/17-03/31/17 | 18.49 | | 18.49 | 2162322 |
| 04/01/2017 | waterx | WATER 03/01/17-03/31/17 | 16.62 | | 35.11 | 2162394 |
| 04/01/2017 | rentx | Base Rent (04/2017) 21 days | 871.50 | | 906.61 | 2175134 |
| 04/01/2017 | rentx | Base Rent (04/2017) 9 days | 373.50 | | 1,280.11 | 2175136 |
| 04/01/2017 | garbagex | Tenant Garbage Bill (04/2017) | 14.50 | | 1,294.61 | 2175388 |
| 04/03/2017 | | chk# 0260 :CHECKscan Payment | | 1,294.61 | 0.00 | 1431833 |
| 04/24/2017 | | chk# 2364 :CHECKscan Payment | | 60.71 | (60.71) | 1438175 |
| 05/01/2017 | gasx | GAS 04/01/17-04/30/17 | 19.56 | | (41.15) | 2182500 |
| 05/01/2017 | waterx | WATER 04/01/17-04/30/17 | 17.55 | | (23.60) | 2182581 |
| 05/01/2017 | rentx | Base Rent (05/2017) | 1,245.00 | | 1,221.40 | 2189591 |
| 05/01/2017 | garbagex | Tenant Garbage Bill (05/2017) | 14.50 | | 1,235.90 | 2189843 |
| 05/04/2017 | | chk# 2365 :CHECKscan Payment | | 1,296.61 | (60.71) | 1447350 |
| 05/05/2017 | electx | elec bill 12/21-1/23/17 | 68.78 | | 8.07 | 2199244 |
| 05/05/2017 | electx | Elec bill 1/23-2/20/17 | 48.92 | | 56.99 | 2199245 |
| 05/05/2017 | electx | Electric bill 2/20-3/22/17 | 43.84 | | 100.83 | 2199246 |
| 05/30/2017 | | chk# 2370 :CHECKscan Payment | | 100.83 | 0.00 | 1452783 |
| 06/01/2017 | gasx | GAS 05/01/17-05/31/17 | 12.28 | | 12.28 | 2203376 |
| 06/01/2017 | waterx | WATER 05/01/17-05/31/17 | 15.16 | | 27.44 | 2203481 |
| 06/01/2017 | rentx | Base Rent (06/2017) | 1,245.00 | | 1,272.44 | 2219395 |
| 06/01/2017 | garbagex | Tenant Garbage Bill (06/2017) | 14.50 | | 1,286.94 | 2219656 |
| 06/05/2017 | | chk# 2372 :CHECKscan Payment | | 1,286.94 | 0.00 | 1460707 |
| 07/01/2017 | gasx | Gas 06/01/2017 – 06/30/2017 | 13.44 | | 13.44 | 2228286 |
| 07/01/2017 | waterx | Water 06/01/2017 – 06/30/2017 | 17.15 | | 30.59 | 2228400 |
| 07/01/2017 | rentx | Base Rent (07/2017) | 1,245.00 | | 1,275.59 | 2240577 |
| 07/01/2017 | garbagex | Tenant Garbage Bill (07/2017) | 14.50 | | 1,290.09 | 2240829 |
| 07/05/2017 | | chk# 2373 :CHECKscan Payment | | 1,290.09 | 0.00 | 1474549 |

| Date | Code | Description | | | | |
|---|---|---|---|---|---|---|
| 01/01/2018 | gasx | Gas 12/01/2017 - 12/31/2017 | 15.48 | | 171.35 | 2355762 |
| 01/01/2018 | waterx | Water 12/01/2017 - 12/31/2017 | 16.21 | | 187.56 | 2355966 |
| 01/01/2018 | rentx | Base Rent (01/2018) | 1,245.00 | | 1,432.56 | 2361779 |
| 01/01/2018 | garbagex | Tenant Garbage Bill (01/2018) | 14.50 | | 1,447.06 | 2362345 |
| 01/01/2018 | inswaiv | No Insurance Fee (01/2018) | 15.00 | | 1,462.06 | 2362347 |
| 01/04/2018 | latex | Jan Late Fee | 50.00 | | 1,512.06 | 2370966 |
| 01/05/2018 | | chk# 9210334582 | | 1,000.00 | 512.06 | 1560342 |
| 01/09/2018 | latex | 2nd Jan Late Fee | 50.00 | | 562.06 | 2371867 |
| 01/22/2018 | | chk# 519811 :CHECKscan Payment | | 463.00 | 99.06 | 1562864 |
| 02/01/2018 | gasx | Gas 01/01/2018 - 01/31/2018 | 17.32 | | 116.38 | 2376271 |
| 02/01/2018 | waterx | Water 01/01/2018 - 01/31/2018 | 16.76 | | 133.14 | 2376478 |
| 02/01/2018 | rentx | Base Rent (02/2018) | 1,245.00 | | 1,378.14 | 2385074 |
| 02/01/2018 | garbagex | Tenant Garbage Bill (02/2018) | 14.50 | | 1,392.64 | 2385327 |
| 02/01/2018 | inswaiv | No Insurance Fee (02/2018) | 15.00 | | 1,407.64 | 2385328 |
| 02/03/2018 | | chk# 519902 :CHECKscan Payment | | 1,310.00 | 97.64 | 1571993 |
| 03/01/2018 | gasx | Gas 02/01/2018 - 02/28/2018 | 22.14 | | 119.78 | 2395743 |
| 03/01/2018 | waterx | Water 02/01/2018 - 02/28/2018 | 21.99 | | 141.77 | 2395952 |
| 03/01/2018 | rentx | Base Rent (03/2018) | 1,245.00 | | 1,386.77 | 2407341 |
| 03/01/2018 | garbagex | Tenant Garbage Bill (03/2018) | 14.50 | | 1,401.27 | 2407856 |
| 03/01/2018 | inswaiv | No Insurance Fee (03/2018) | 15.00 | | 1,416.27 | 2407858 |
| 03/02/2018 | inswaiv | waived upon proof of policy | (90.48) | | 1,325.79 | 2410844 |
| 03/02/2018 | | chk# 520059 :CHECKscan Payment | | 1,325.79 | 0.00 | 1583402 |
| 04/01/2018 | gasx | Gas 03/01/2018 - 03/31/2018 | 19.74 | | 19.74 | 2416423 |
| 04/01/2018 | waterx | Water 03/01/2018 - 03/31/2018 | 19.13 | | 38.87 | 2416630 |
| 04/01/2018 | garbagex | Tenant Garbage Bill (04/2018) | 14.50 | | 53.37 | 2427757 |
| 04/01/2018 | rentx | Base Rent (04/2018) | 1,245.00 | | 1,298.37 | 2428162 |
| 04/05/2018 | | chk# 520275 :CHECKscan Payment | | 962.50 | 335.87 | 1599319 |
| 04/18/2018 | | chk# 520320 :CHECKscan Payment | | 370.00 | (34.13) | 1601626 |
| 05/01/2018 | gasx | Gas 04/01/2018 - 04/30/2018 | 18.10 | | (16.03) | 2437980 |
| 05/01/2018 | waterx | Water 04/01/2018 - 04/30/2018 | 13.83 | | (2.20) | 2438187 |
| 05/01/2018 | garbagex | Tenant Garbage Bill (05/2018) | 14.50 | | 12.30 | 2448539 |
| 05/01/2018 | rentx | Base Rent (05/2018) | 1,280.00 | | 1,292.30 | 2448948 |
| 05/04/2018 | latex | May 1st Late Fee | 50.00 | | 1,342.30 | 2452898 |
| 05/09/2018 | latex | May 2nd Late Fee | 50.00 | | 1,392.30 | 2454488 |
| 05/14/2018 | | chk# 520461 :CHECKscan Payment | | 1,400.00 | (7.70) | 1614497 |
| 06/01/2018 | gasx | Gas 05/01/2018 - 05/31/2018 | 15.50 | | 7.80 | 2458308 |
| 06/01/2018 | waterx | Water 05/01/2018 - 05/31/2018 | 17.65 | | 25.45 | 2458514 |
| 06/01/2018 | lockoutx | changed lock at Resident's request | 50.00 | | 75.45 | 2473713 |
| 06/01/2018 | garbagex | Tenant Garbage Bill (06/2018) | 14.50 | | 89.95 | 2474632 |
| 06/01/2018 | rentx | Base Rent (06/2018) | 1,280.00 | | 1,369.95 | 2475042 |
| 06/05/2018 | latex | Late Fee | 60.00 | | 1,429.95 | 2476998 |
| 06/05/2018 | latex | Late fee correction | (10.00) | | 1,419.95 | 2477113 |
| 06/09/2018 | latex | Late fee (2) | 50.00 | | 1,469.95 | 2477881 |
| 07/01/2018 | gasx | Gas 06/01/2018 - 06/30/2018 | 10.94 | | 1,480.89 | 2482640 |
| 07/01/2018 | waterx | Water 06/01/2018 - 06/30/2018 | 18.43 | | 1,499.32 | 2482846 |
| 07/01/2018 | garbagex | Tenant Garbage Bill (07/2018) | 14.50 | | 1,513.82 | 2492361 |

| 07/01/2018 | rentx | Base Rent (07/2018) | 1,280.00 | | 2,793.82 | 2492765 |
| 07/02/2018 | | chk# 461555 :CHECKscan Payment | | 1,000.00 | 1,793.82 | 1636222 |
| 07/05/2018 | latex | Late Fee | 50.00 | | 1,843.82 | 2499642 |
| 07/09/2018 | latex | late fee (2) | 50.00 | | 1,893.82 | 2500824 |
| 07/26/2018 | | chk# 520827 :CHECKscan Payment | | 400.00 | 1,493.82 | 1645847 |
| 08/01/2018 | gasx | Gas 07/01/2018 - 07/31/2018 | 11.00 | | 1,504.82 | 2506166 |
| 08/01/2018 | waterx | Water 07/01/2018 - 07/31/2018 | 18.54 | | 1,523.36 | 2506366 |
| 08/01/2018 | garbagex | Tenant Garbage Bill (08/2018) | 14.50 | | 1,537.86 | 2516560 |
| 08/01/2018 | inswaiv | No Insurance Fee (08/2018) 1 day | 0.48 | | 1,538.34 | 2516735 |
| 08/01/2018 | rentx | Base Rent (08/2018) | 1,280.00 | | 2,818.34 | 2516959 |
| 08/06/2018 | latex | Late Fee | 50.00 | | 2,868.34 | 2523210 |
| 08/10/2018 | latex | Late Fee (2) | 50.00 | | 2,918.34 | 2525317 |
| 08/15/2018 | | chk# 520936 :CHECKscan Payment | | 1,000.00 | 1,918.34 | 1658939 |
| 08/23/2018 | | chk# 520967 :CHECKscan Payment | | 624.00 | 1,294.34 | 1660828 |
| 09/01/2018 | gasx | Gas 08/01/2018 - 08/31/2018 | 10.28 | | 1,304.62 | 2529853 |
| 09/01/2018 | waterx | Water 08/01/2018 - 08/31/2018 | 19.45 | | 1,324.07 | 2530060 |
| 09/01/2018 | garbagex | Tenant Garbage Bill (09/2018) | 14.50 | | 1,338.57 | 2535471 |
| 09/01/2018 | inswaiv | No Insurance Fee (09/2018) | 15.00 | | 1,353.57 | 2535641 |
| 09/01/2018 | rentx | Base Rent (09/2018) | 1,280.00 | | 2,633.57 | 2535863 |
| 09/04/2018 | latex | Late Fee | 50.00 | | 2,683.57 | 2546959 |
| 09/07/2018 | | chk# 521085 :CHECKscan Payment | | 500.00 | 2,183.57 | 1673613 |
| 09/11/2018 | latex | Late Fee (2) | 50.00 | | 2,233.57 | 2549241 |
| 10/01/2018 | gasx | Gas 09/01/2018 - 09/30/2018 | 10.85 | | 2,244.42 | 2553627 |
| 10/01/2018 | waterx | Water 09/01/2018 - 09/30/2018 | 17.88 | | 2,262.30 | 2553830 |



brian krause <bmkrause09@hotmail.com> wrote:

I am not sure whey there is a notation that the case was dismissed, but I have not dismissed it and I am planning on being at trial next week on the 13th.

Just in case, I have filed a motion to vacate any dismissals. I will

This form is approved by the Illinois Supreme Court and is required to be used in all Illinois Circuit Courts.

| STATE OF ILLINOIS,<br>CIRCUIT COURT<br><br>_Kane_ **COUNTY** | **EVICTION ORDER** | For Court Use Only |
|---|---|---|



For Court Use Only

Thomas M. Hartwell
Clerk of the Circuit Court
Kane County, IL

**DEC 1 1 2018**

FILED

18 LM 1385

**Case Number**

**Instructions ▾**

Directly above, enter the name of the county where the case was filed.

**Plaintiff** *(For example, the landlord or owner):*

Axiom St Charles LLC Nb/a
Prairie Pointe Apts

Enter the full names of Plaintiff, Defendants, and the case number as listed on the *Eviction Complaint.*

v.

**Defendants** *(For example, the tenants or occupants):*

Baudelaire Ulysse

Check the box for Unknown Occupants if it was checked on *Eviction Complaint.*

☒ **Unknown Occupants**

| **Notice to Defendants:** | This *Order* is a judgment against you. It may appear on a background or credit check and affect your ability to rent housing. Do not agree to or sign off on this *Order* if:<br>• You have an agreement with Plaintiff that lets you stay in the property; or<br>• Plaintiff has agreed to dismiss this case if you move out by a certain date. |
|---|---|

Check this box if the judge dismissed any Defendants from the case. Enter the names of those Defendants.

☐ The following individuals are dismissed as Defendants, and this *Order* does not apply to them:

_____

In 1, enter the complete address, including the street direction (N., E., etc.) and unit # or floor.

**1.** Plaintiff is given possession of the property located at:

1812 Wessel Court
*Street address*     *Unit*

St Charles     IL     60174
*City*     *State*     *ZIP*

In 2, enter the date and time by which Defendants must move out.

**2.** Defendants must move out of the property on or before _12/31/18_ by ☒ 11:59 p.m.
*Date*
or by ☐ _____
*Time*

In 3, enter the names of Defendants to be evicted and check the box for Unknown Occupants if it was checked on the *Eviction Complaint.*

**3.** Plaintiff may give the sheriff a copy of this *Eviction Order.* If Defendants do not move by the date and time listed above, the Sheriff is ordered to evict the following Defendants:

Baudelaire Ulysse
☒ Unknown Occupants

In 4, check the boxes that apply. If Plaintiff is awarded money, enter the names of Defendants who have been ordered to pay the money.

**4.** Plaintiff is owed *(check all that apply):* ☐ No money claimed in *Eviction Complaint*
☐ Money claim dismissed and Plaintiff may seek this money in the future
☐ Money claim dismissed and Plaintiff may not seek this money in the future
☒ $ 2550.00 in rent or assessments
☐ $ _____ in court costs
☐ $ _____ in attorneys' fees *(if allowed)*
☒ The total judgment amount of $ 2550.00 is entered against the following Defendants:

Baudelaire Ulysse

**Sections 1-4 must be completed.**

☐ The Court is not yet ruling on the money claim. Case continued to _____ _____
*Date*     *Time*
for ☐ status ☐ hearing in courtroom _____
and the Court finds there is no just reason to delay enforcement or appeal of this *Eviction Order.*

Enter the name and contact information of the person completing this *Order.*

**Name:** Brian M Kraus

**Address:** 5277 Trillium Blvd

**Telephone #:** _____

**Attorney # *(if any):*** _____

**ENTERED:** 12/11/18
*Date*